(37 South. 771.)

No. 15,091.

HUNTER CANAL CO., Limited, v. ROBERT-SON'S HEIRS.*

(June 20, 1904.)

CONTRACT—PERFORMANCE—SET-OFF — SEQUES-
TRATION—COSTS—RECONVENTIONAL
DEMAND.

1. Where there has been an imperfect performance of a contract for the irrigation of a rice crop, and the parties have elected to let the contract go on to the end of the irrigation season, and the crop has suffered from the failure to furnish water in time and in sufficient quantity, the water rent stipulated in the contract will be due up to the full amount thereof, if the crop has been benefited that much; but the debt will be offset by any loss that may have resulted from the dereliction of the contractor.

2. In such cases only the excess of the rent can serve as a basis for sequestration.

3. Where there is a reconventional demand, and both parties are cast, each must pay the costs occasioned by the demand of the other; and, where the testimony has borne on both demands, the costs thereof will be divided.

(Syllabus by the Court.)

---

*Rehearing denied January 16, 1905.

Appeal from Seventeenth Judicial District Court, Parish of Vermilion; Minos Thomas Gordy, Jr., Judge.

Action by the Hunter Canal Company, Limited, against the heirs of John P. Robertson. Judgment for plaintiff, and defendants appeal. Reversed.

Walter Brown Gordy and Foster, Milling, Godchaux & Sanders, for appellants. William Benjamin White, Edwards & Greene, and Saunders & Gurley, for appellee.

PROVOSTY, J. This suit is upon a contract entered into by the plaintiff with John P. Robertson for the irrigation of the latter's rice crop of the year 1901. John P. Robertson died after the institution, but before the trial, of the suit, and the defendants are his heirs. Defendants deny that plaintiff furnished water in time or in quantity sufficient, and claim damages in reconvention to an amount largely exceeding the amount of rent claimed by plaintiff.

The case was very clearly and very fully argued at the bar, and the five briefs press upon the attention of the court every salient point in the evidence. The court has read every word of the 261 immense, solid pages of the testimony, and the most of it twice, and a great deal of it three and more times, and has digested and classified it, with a view to weighing it; and the result has not been very satisfactory. But the court has risen from that study with the conviction that the plaintiff was remiss in the performance of its contract, and that defendant suffered a great deal thereby. A man hardly cries without he is hurt, and defendant during the season was fairly vociferous. The several rice planters along plaintiff's canal, who were examined as witnesses—both those who appeared for plaintiff and those who appeared for defendants—seem to have joined their voices to that of John P. Robertson in a chorus of complaint.

That defendants suffered loss, and very considerable loss, through the delinquency of plaintiff, is indubitable. In fact, plaintiff can deny it only with a very faint voice; arguing that inasmuch as Robertson made an average crop upon his land, taken as a whole, therefore there was no injury resulting from the failure to furnish water when the crop was suffering and some of it dying for want of water—not even from the total or semitotal loss of the crop upon particular parts of the lands. This argument evidently will not hold water.

Every witness, with the exception, perhaps, of one, agrees that the land of Robertson was prepared as well as land can be prepared, and that it was planted with the best of seed, and that a perfect stand was obtained, and that the planting was done rather early than late; and nothing is said about the land not having been good. If, under these circumstances, Robertson made more than an average crop upon those parts of the land which were more favored with water, plaintiff certainly cannot avail itself of that to offset Robertson's losses resulting from insufficiency of water upon other parts of the land.

That the water supply was not satisfactory, there can be and is no denial. The excuses of plaintiff are that one of the pumps broke down, and that for three days the water supply failed in the river as an effect of north winds, and that it is too expensive to run the four pumps in the early part of the season. Over the failure of the water supply in the river, plaintiff, as a matter of course, had no control, and is excused for the three or four days of low water; but at the time the one pump was disabled only two pumps were being run, and, of course, the expensiveness of running the four pumps is no excuse.

So far the case offers no difficulty. But when the court comes to ascertaining what Robertson's loss was, the case becomes a maze in which the searcher after a satisfactory solution is well-nigh lost.

With regard to the losses upon all of the crop, except the cuts A, E, and F, of the Gueydan plat, the evidence is too vague to serve as a foundation for a judgment. With regard to the loss upon cut A, the testimony fixes it, with as much certainty, perhaps, as is attainable in such cases, at 50 per cent. The court understands the witnesses as estimating the loss at 50 per cent. as a result of the lack of water; that is to say, exclusive of what injury may have been done by insects and grass. The only estimate of the crop actually made on this cut is derived from the testimony of Mr. Hunter, the assistant manager of the plaintiff company, who says that Mr. Robertson estimated the crop after it was on shocks at 6 or 7 or 8 sacks, while he (the witness) estimated it at 8 sacks. This evidence is too vague to be of any service. The court prefers to say that an average crop would be 10 sacks per acre, and that the 50 per cent. loss was one-half of that. The loss of Robertson on this cut of 97.41 acres would have been, therefore, 487.05 sacks.

On cut E the loss was greater, but the court will adopt the same estimate, it not being possible from the record to arrive with any sort of certainty at any other. This would place the loss of Robertson upon cut E at 33.60 sacks.

The crop on cut F, containing 57.62 acres, was virtually a total loss. Plaintiff admits that 25.47 acres were not irrigated at all, but says the land was too high to be irrigated, and came under the clause of the contract by which plaintiff was to claim no rent and be under no liability for such lands as were too high to be irrigated.

On the point of whether it was possible to plaintiff to irrigate this cut F, the court will take the testimony of Mr. Yantis, plaintiff's

witness, who says that in the following year (1902) he irrigated 40 acres of the land comprised in cuts E and F, without having raised the levees of the lateral conducting the water to this land. Nothing, in the opinion of the court, can be more satisfactory than such a test. Deducting from this 40 acres the 6.73 acres contained in cut E, and there is left in cut F 33.27 acres upon which the crop was a total loss by the fault of plaintiff. Adopting the same average of 10 sacks per acre, and the loss of Robertson on this cut would be 332.70 sacks, less 66.54 sacks, which, if the crop had been made, Robertson would have had to pay to plaintiff for rent.

We agree with plaintiff that the contract could not be varied by parol, but there is no need to vary the contract, to include this land in it, since it includes all lands that it would be possible to irrigate; and we find as a fact that this 33.27 acres of cut F is of that character.

Plaintiffs violated their contract, and therefore can recover only for a partial performance. The rule in such cases is stated in the case of Houston River Canal Co. v. Kopke, 106 La. Ann. 609, 31 South. 156, as follows:

"Such company, in order to recover rent for water claimed to have been furnished under contract, must prove the contract, and the service in accordance therewith; and where it is claimed that there was a partial performance, accepted by the lessee, any pro tanto recovery must be proportioned to definitely established benefits derived therefrom by the lessee, after deducting damages resulting from failure to perform in full. If the benefit cannot be clearly so established, there can be no recovery."

See, also, Taylor .v. Almanda, 50 La. Ann. 351, 23 South. 365, and cases there cited.

In the present case, Robertson could not have made any rice at all without water furnished by plaintiff, and the crop upon every acre that was irrigated largely exceeded the amount of the rent. Therefore plaintiff is entitled to the full amount of the rent for every acre that was irrigated; that is to say,

on the total acreage of Robertson's land, except cut F, or, say, 268.61 acres.

The court will adopt the valuation which both parties in their pleadings fix upon the sack of rough rice, $3.50. According to this valuation, plaintiff would be entitled to $1,880.27 of rent. And defendant would be entitled to an amount of damages equal to 786.81 sacks of rice at the same valuation, less, however, whatever would have been the expense of harvesting and threshing and sacking the rice. For the purpose of ascertaining the latter amount, the case will have to be remanded.

In the case of Penniston v. Somers, 15 La. Ann. 679, it was held that where there is a reconventional demand, and both parties are cast, each must pay his own costs. The Code of Practice requires that the costs shall be paid by the party cast. Article 549. It would seem, therefore, that the rule should be just the reverse, namely, that where there is a reconventional demand, and both parties are cast, each should pay the costs of the other. And we shall so decree in this case, but, in so much as the testimony bore on both demands, the court will order the costs of the testimony to be divided.

The costs of the sequestration stand on a different footing. Any claim accruing to plaintiff as a result of the performance of the contract was offset by whatever debt grew out of the nonperformance of the contract. Only the excess could serve as a basis for sequestration. Therefore the costs of the sequestration will have to abide the result of the suit, and fall upon one or the other party accordingly as the damages were greater or less than the rent.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that this case be remanded for further trial and adjudication in accordance with the views herein above expressed. Costs of this appeal to be paid by the plaintiff.